(110 App. Div. 188)

### STRONG v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   December 29, 1905.)

1. INSANE PERSONS—PROCEEDINGS IN LUNACY—COMPENSATION OF EXAMINER—
   SUFFICIENCY OF EVIDENCE.
   Greater New York Charter, Laws 1897, p. 231, c. 378, § 662, conferred
   on the commissioner of public charities for the boroughs of Brooklyn and
   Queens all the authority concerning the care, etc., of insane persons, which
   the board of charities and corrections of the city of Brooklyn, and the
   superintendent or overseers of the poor of the county of Queens, had at
   the time of the passage of the act.   Insanity Law, Laws 1896, p. 498, c. 545,
   § 68, provides that any apparently insane person may be arrested and con-
   fined until the determination of his sanity, and that the officer making
   the arrest shall immediately notify the commissioner of public charities
   in the city of New York or the commissioners of charities and corrections
   in the city of Brooklyn, who shall forthwith take proper measures for
   the determination of the question of the insanity of such person.   Sec-
   tion 62 (page 492) requires, among other things, that the petition shall
   be accompanied by a certificate of lunacy by the medical examiners, as pre-
   scribed in section 61, which provides that the certificate of lunacy must
   show that such person is insane and must be made by two reputable phy-
   sicians who have filed with the commission a certified copy of the cer-
   tificate of a judge of a court of record, showing their qualifications, etc.
   Section 64 (page 495) provides that the costs necessarily incurred in de-
   termining the question of insanity of a poor person, etc., shall be a charge
   on the city or county securing the commitment.   Held, that evidence
   that the commissioner of public charities for the boroughs of Brooklyn
   and Queens was advised that plaintiff was employed by the sheriff of
   Queens county to examine persons committed to the Queens county jail
   as insane persons, and that some of the certificates made by plaintiff as
   an examiner in lunacy under said section 61 (page 492) were used by
   the commissioner as the basis of his application for orders of commitment,
   was sufficient to justify a finding that plaintiff's employment was sanc-
   tioned by the commissioner, and that defendant city was liable to com-
   pensate him for such services in cases of indigent insane.

2. SAME—ALLOWANCE OF FEES BY JUDGE ORDERING COMMITMENT—NECESSITY.
   Laws 1896, p. 495, c. 545, § 64, further provides that such costs shall
   include the fees allowed by the judge ordering the commitment to the
   medical examiners.   Held that, where it was not shown whether or not
   any such fees were expressly allowed by the judge passing on the cases
   of insane persons examined by plaintiff, the omission to procure such fees
   to be fixed by the commissioner of public charities did not deprive plain-
   tiff, acting under the employment of the commissioner, of the right to
   compensation for his services.

Appeal from Municipal Court, Borough of Queens, First District.

Action by Chapman E. Strong against the city of New York.
Judgment for defendant, and plaintiff appeals.   Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOOD-
WARD, JENKS, and HOOKER, JJ.

Harry T. Weeks, for appellant.

Edward H. Wilson (James D. Bell, on the brief), for respondent.

WILLARD BARTLETT, J.   This action was brought by a physi-
cian to recover compensation for services rendered by him at the
request of the sheriff of Queens county, between the 11th day of
January, 1900, and the 5th day of June, 1901, as an examiner in
lunacy, in examining into the sanity of certain persons who had

been committed to the custody of said sheriff as apparently insane. The plaintiff has been defeated in his suit on the ground that his employment by the sheriff was not authorized by law, and on the further ground that the city of New York is not under any express or implied obligation to pay him for his services.

During the period when the services were rendered, the original Greater New York Charter (Chapter 378 of the Laws of 1897) was in force, and section 662 (page 231) of that statute conferred upon the commissioner of public charities for the boroughs of Brooklyn and Queens, all the authority concerning the care, custody, and disposition of insane, feeble-minded, sick, infirm, and destitute persons, which the board of charities and corrections of the city of Brooklyn and county of Kings as formerly constituted, and the superintendent or overseers of the poor of the county of Queens, had at the time of the passage of that act. The insanity law (chapter 545 of the Laws of 1896) in section 68 (page 498) then contained and now contains the following provision:

"Any person apparently insane, and conducting himself in a manner which in a sane person would be disorderly, may be arrested by any peace officer and confined in some safe and comfortable place until the question of his sanity be determined, as prescribed by this chapter. The officer making such arrest shall immediately notify the superintendent of the poor of the county, or the overseers of the poor of the town or city, or, in the city of New York, the commissioners of public charities, or, in the city of Brooklyn, the commissioners of charities and correction, who shall forthwith take proper measures for the determination of the question of the insanity of such person."

The effect of this enactment, taken in connection with the provision above cited from the original Greater New York Charter, was to impose upon the commissioner of public charities for the boroughs of Brooklyn and Queens, the duty of taking proper measures for the determination of the question of the insanity of the persons who were committed to the custody of the sheriff of Queens county, and who were examined by the plaintiff. The method of procedure for the determination of that question is prescribed in section 62 of the insanity law, which requires, among other things, that the petition shall be accompanied by the certificate of lunacy of the medical examiners, as prescribed in section 61 of the same statute. The evidence upon the trial of the present action shows, not only that the commissioner of public charities for the boroughs of Brooklyn and Queens was made acquainted with the fact that the plaintiff was employed to examine persons committed to the Queens county jail as insane persons, but also that some of the certificates made by the plaintiff as an examiner in lunacy under section 61 of the insanity law were used by the commissioner as the basis of his application for orders of commitment under section 62. It seems to me that the evidence on this subject is sufficient to justify, if not to require, a finding that the employment of the plaintiff to make those examinations which resulted in a medical certificate of lunacy, was sanctioned by the commissioner. If so, the city of New York would seem to be liable to compensate him for his services, at least in the cases of the indigent insane, under section 64 of the insanity law,

which provides that the costs necessarily incurred in determining the question of the insanity of a poor or indigent person, and in securing his admission into a state hospital, and the expense of providing clothing for such person, shall be a charge upon the town, city, or county securing the commitment. That section further provides that such costs "shall include the fees allowed by the judge or justice ordering the commitment to the medical examiners." In the present action it does not appear whether any such fees were expressly allowed by the judge or justice who passed upon the cases of the persons examined by the plaintiff; but the omission to procure such fees to be fixed by the commissioner of public charities, who must have been the moving party in the legal proceedings for the determination of the mental condition of a poor person, cannot be held to deprive an examiner in lunacy, acting virtually under the employment of the commissioner, of the right to be compensated for his services.

The proof in this case satisfies me that the plaintiff is entitled to recover against the city, at all events for a portion of his claim; and I, therefore advise a reversal of the judgment and the granting of a new trial.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.